# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| AMY S. TORKELSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 12-1018-CM |
| CAROLYN W. COLVIN,[1] | ) |
| ACTING COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Amy S. Torkelson alleges that attention deficit hyperactivity disorder ("ADHD"), depression, a left shoulder injury, and obesity render her disabled. Plaintiff filed this action pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401 et seq., and Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. Under Title II, plaintiff requests disability insurance benefits. Under Title XVI, plaintiff requests supplemental security income benefits. Following a hearing, an Administrative Law Judge ("ALJ") found that plaintiff was not disabled in a decision dated June 24, 2011. On November 15, 2011, the Appeals Council of the Social Security Administration denied plaintiff's request for review. Thus, the ALJ's decision stands as the final decision of the Commissioner.

Plaintiff contends that the ALJ erred by (1) failing to properly establish plaintiff's residual functional capacity ("RFC"); and (2) failing to properly assess plaintiff's credibility. After reviewing the record, the court affirms the decision of the Commissioner.

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Federal Rule of Civil Procedure 25(d)(1), Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

-1-

I. **Legal Standard**

Under 42 U.S.C. § 405(g) this court applies a two-pronged review to the ALJ's decision. This review determines (1) whether the ALJ's decision is supported by substantial evidence in the record as a whole and (2) whether the ALJ applied the correct legal standards. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). "Substantial evidence" means "more than a mere scintilla" and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hunter v. Astrue*, 321 F. App'x 789, 792 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)). In its analysis, the court may not reweigh the evidence or substitute its judgment for that of the ALJ. *See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). On the other hand, the court must examine the entire record—including any evidence that may detract from the decision of the ALJ. *Jaramillo v. Massanari*, 21 F. App'x 792, 794 (10th Cir. 2001) (citing *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994)).

Plaintiff bears the burden of proving disability. *Hunter*, 321 F. App'x at 792. A disability requires an impairment—physical or mental—that renders one unable to engage in any substantial gainful activity. *Id.* (quoting *Barnhart v. Walton*, 535 U.S. 212, 217 (2002)). Impairment, as defined under 42 U.S.C. § 423(d)(1)(A), is a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

The ALJ uses a five-step sequential process to evaluate disability claims. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (citation omitted). But the ALJ may stop once she makes a disability determination; she need not proceed to subsequent steps if she concludes that a claimant is or is not disabled at an intermediate step. *Id.* Step one requires the plaintiff to demonstrate that she is not

engaged in substantial gainful employment activity. *Id*. If the plaintiff meets this burden, then the ALJ proceeds to the second step. Step two requires the plaintiff to demonstrate that she has a "medically severe impairment or combination of impairments" that severely limits her ability to do work. *Id*. (internal quotation omitted). At this point, if the plaintiff cannot show that her impairments would have more than a minimal effect on her ability to do work, then the ALJ may determine plaintiff is not disabled. *Id.* at 751. If the plaintiff meets the de minimis showing, then the ALJ proceeds to step three. *Id*.

At step three, the ALJ compares the plaintiff's impairment to the "listed impairments"—impairments that the Secretary of Health and Human Services recognizes as severe enough to preclude substantial gainful activity. *Id*. If the plaintiff's impairment matches one on the list, then a finding of disability is made. *Id.* If not, the ALJ advances to step four. *Id*. Before step four, however, the ALJ must assess the plaintiff's RFC. *Baker v. Barnhart*, 84 F. App'x 10, 13 (10th Cir. 2003) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996)). The ALJ uses this RFC for steps four and five. At step four, the plaintiff must demonstrate that her impairment prevents her from performing her past work. *Williams*, 844 F.2d at 751. If this showing is made, the ALJ moves to the fifth and final step. *Id.* Here, the burden shifts to the ALJ. *Id*. The ALJ must—considering the plaintiff's RFC and vocational factors of age, education and work experience—show that the plaintiff can perform some work that exists in large numbers in the national economy. *Id*.

## II. <u>Analysis</u>

### A. The Administrative Decision

The ALJ conducted a hearing where she and plaintiff's counsel asked questions of plaintiff and a Vocational Expert ("VE"). The ALJ then issued her decision, determining that plaintiff met the insured status requirements of the Social Security Act through March 31, 2014. (R. at 13.) The ALJ

also found that plaintiff had not engaged in substantially gainful activity since February 11, 2008, the alleged onset date. (*Id*.) Based on evidence in the record, the ALJ concluded that plaintiff suffers from the following severe impairments: ADHD, major depressive disorder, left shoulder impingement, bilateral epicondylitis, and obesity. (*Id*. at 13–14.) The ALJ then found that plaintiff did not have an impairment or combination of impairments listed in or medically equal to one of the listed impairments. (*Id*. at 14–15 (specifically citing listings 1.02, 12.02, and 12.04).)

The ALJ determined that plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), in that plaintiff "can lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for six hours out of an eight-hour workday; and sit for six hours out of an eight-hour workday." (*Id*. at 15–16.) The ALJ also limited plaintiff to "no overhead reaching and simple, routine and repetitive tasks in a work environment free of fast paced production requirements involving only simple work-related decisions with few, if any workplace changes." (*Id*.) Further, the ALJ limited plaintiff to "only occasional interaction with the public" and found that she "can work around co-workers throughout the day, but with only occasional interaction with co-workers." (*Id*.)

The ALJ found that, although plaintiff had worked several jobs in the past fifteen years, plaintiff was at each job for only a short time. (*Id*. at 21.) The ALJ noted that she gave plaintiff "the benefit of the doubt" and found that she had no past relevant work. (*Id*.) Nevertheless, the ALJ determined that plaintiff would be able to perform other work existing in significant numbers in the national economy. (*Id*.) Finally, the ALJ found that plaintiff had not been under a disability from February 11, 2008, to the date of the decision. (*Id*. at 22.)

**B. Plaintiff's Claims**

As mentioned above, plaintiff alleges two overriding errors with the ALJ's decision. Plaintiff argues that the ALJ erred in: (1) failing to properly establish plaintiff's RFC; and (2) failing to properly assess plaintiff's credibility.

### *1. Determination of Plaintiff's RFC*

As outlined above, the ALJ assesses plaintiff's RFC prior to step four. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200(a). At step four, the ALJ must make three phases of findings: (1) plaintiff's RFC; (2) the physical and mental demands of plaintiff's prior employment; and (3) considering the RFC and the physical and mental demands, plaintiff's ability to return to her prior employment. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (citations omitted); *Hill v. Astrue*, No. 07-1028-MLB, 2007 WL 4741371, at *5 (D. Kan. Sept. 7, 2007) (citing *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993)). Here, plaintiff argues that the RFC is not based on substantial evidence because the ALJ relied upon her own unsubstantiated conclusions, rather than relying upon the opinion of a medical professional.

      a. <u>Physical Impairments</u>

Plaintiff argues that the ALJ's determination that plaintiff could perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), as well as no overhead reaching, is not supported by substantial evidence. Plaintiff asserts that the ALJ did not provide a narrative discussion of the evidence or link the RFC finding to specific medical evidence in the record. Specifically, plaintiff points out that the doctors' opinions to whom the ALJ gave great weight—Drs. Bieri, Teter, and Sankoorikal—did not find that plaintiff had any restrictions. Plaintiff also notes that plaintiff's treating therapist, Mr. Herring—to whom the ALJ gave little weight regarding limitations—did provide

-5-

limitations on lifting more than ten to fifteen pounds, and no lifting above chest level. Thus, plaintiff concludes that there is no medical evidence to support the RFC given by the ALJ in this case.

The ALJ must determine a plaintiff's RFC based on all relevant evidence, not just the medical evidence. *New v. Astrue*, No. 11-1211-JAR, 2012 WL 1108556, at *8 (D. Kan. Apr. 2, 2012) (citations omitted); 20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946. This evidence includes medical opinions, medical records, and the plaintiff's own testimony regarding her limitations and impairments. *Id.* Moreover, the ALJ's opinion need not be based entirely on a specific physician's opinion. *New*, 2012 WL 1108556, at *8.

Here, plaintiff argues that the ALJ did not provide a narrative discussion explaining how she assessed plaintiff's RFC and also did not link the RFC to specific evidence in the record. The court disagrees. The ALJ properly discussed the evidence in the record, including the objective medical evidence, plaintiff's testimony, statements made by plaintiff's mother, the state agency medical consultant's examination and findings, plaintiff's course of treatment, level of daily activity, and her work history. (R. at 13–21.)

Plaintiff's main argument is that the ALJ's RFC finding was arbitrary because the doctors' opinions to whom the ALJ gave great weight—Drs. Bieri, Teter, and Sankoorikal—found that plaintiff had no restrictions. (R. at 601, 321, 417.) Thus, because the ALJ found that plaintiff was limited to light work, plaintiff argues that the ALJ's finding was not based on any medical evidence. Although plaintiff's treating therapist, Mr. Herring, did find that plaintiff was subject to some weight limitations, the ALJ explained that she gave only "little weight" to his opinion regarding weight limitations because it conflicted with the more recent opinion of Dr. Sankoorikal.[2] (R. at 16–17, 325, 417.) The ALJ then went on to discuss Dr. Sankoorikal's opinion, noting that she gave it "great weight" because

---

[2] Plaintiff concedes that—as a therapist providing an "other source" opinion—Mr. Herring's opinion is not entitled to the same weight and deference as a treating physician such as Dr. Sankoorikal. (*See* Doc. 17 at 2–3.)

-6-

it was rendered after an examination of plaintiff and was consistent with the medical record as a whole (including the opinions of Drs. Bieri and Teter). (R. at 17–18, 417, 601, 321.)

Plaintiff cites *Billups v. Barnhart*, 322 F. Supp. 2d 1220 (D. Kan. 2004), to support her contention that the ALJ relied on her own layperson judgment instead of basing her decision on a medical opinion and, therefore, erred. In *Billups*, the ALJ found that the plaintiff could lift a maximum of ten pounds; however, the only evidence he cited to was plaintiff's testimony that she could lift five pounds. 322 F. Supp. 2d at 1228. Similarly, the ALJ in *Billups* made other RFC findings based only on plaintiff's testimony. *Id*. But in *Billups*, there were no opinions of any treating physicians regarding how plaintiff's limitations affected her RFC. *Id*. In addition, the ALJ in *Billups* failed to link his findings regarding the RFC to substantial evidence in the record. *Id*.

Although the court in *Billups* found that the ALJ failed to support his RFC determination with evidence in the record, the court noted that the ALJ can make findings without a medical expert in certain situations. *Id.* at 1227. The court stated the following:

> [A]n ALJ may nevertheless rely on evidence in the record, evaluate the evidence and determine how the evidence relates to the claimant's RFC limitations, if a lay person would be capable of evaluating such evidence and determining how that evidence would relate to plaintiff's RFC limitations. Otherwise the ALJ must have a medical opinion on which to base his RFC findings.

*Id*. at 1227 (citations omitted).

Unlike in *Billups* where the ALJ had no medical opinions discussing the plaintiff's impairments and RFC criteria, the ALJ in this case had three medical opinions finding no limitations, and one medical opinion finding limitations. (R. at 325, 601, 321, 417.) In addition, the ALJ had testimony from plaintiff regarding her impairments. (R. at 38–40, 43–45.) The ALJ properly discussed each of the medical opinions, the weight she gave to them, and why she gave each opinion that level of weight. (R. at 13–21.) The ALJ also stated that

-7-

she based her RFC determination on plaintiff's testimony. (R. at 16 (noting that plaintiff testified that her left shoulder causes her pain and she is unable to lift very much or perform repetitious actions), 38.)

Finally, the *Billups* case is distinguishable from this case, as the ALJ in *Billups* made a finding that was less favorable to the plaintiff based on the evidence before the ALJ. 322 F. Supp. 2d at 1228 (finding, for example, that the plaintiff could lift ten pounds when the plaintiff testified that she could only lift five pounds). In contrast, the ALJ here gave plaintiff the benefit of the doubt by issuing a more favorable RFC assessment than was suggested by the medical opinions to which the ALJ gave great weight.

The ALJ's RFC finding was not arbitrary—the ALJ could properly determine, after relying on multiple opinions that plaintiff was capable of performing a full range of work activity at all exertional levels, that plaintiff could perform at a lower level. (R. at 17–18, 21, 601, 321, 417.) The ALJ, after hearing plaintiff's testimony about her left shoulder impingement, bilateral epicondylitis, and obesity, noted that she gave plaintiff "the benefit of the doubt" in finding that she had these severe impairments. Thus, the ALJ's assessment was more restrictive and more favorable to plaintiff. Plaintiff's arguments fail to show that any alleged error by the ALJ prejudiced or harmed plaintiff. *See New*, 2012 WL 1108556, at *8–9 (finding that ALJ's more limiting and more favorable RFC assessment did not prejudice plaintiff) (citing *St. Anthony Hosp. v. U.S. Dep't of Health & Human Servs.*, 309 F.3d 680, 691 (10th Cir. 2002)).

The ALJ is permitted to make "common-sense judgments about functional capacity based on medical findings, as long as the [ALJ] does not overstep the bounds of a lay person's competence and render a medical judgment." *Gordils v. Sec. of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990). In *Gordils*, the First Circuit found that the ALJ was justified in treating a consulting

physician's report stating that the plaintiff likely had a "weaker back" but no other evidence of a disabling back impairment as evidence that the plaintiff's back condition could not preclude sedentary work. *Id.* This was true even though the consulting physician provided no express functional conclusions. *Id.* Another consulting physician had found that the plaintiff retained the RFC to lift twenty pounds and ten pounds frequently, as well as other limitations. *Id.* Thus, the First Circuit found that both reports together constituted substantial evidence that the plaintiff could perform sedentary work.[3] *Id.*

Here, the ALJ was also permitted to make a common-sense judgment based on the evidence before her. In this case, the ALJ was faced with the reports of three doctors who put no limitations on plaintiff—to which the ALJ gave great weight; a report from plaintiff's treating therapist giving plaintiff certain weight limitations—to which the ALJ gave little weight; and plaintiff's testimony about her impairments. (R. at 601, 321, 417, 325, 38–40, 43–45.) The ALJ was justified in giving plaintiff "the benefit of the doubt" and coming to a common-sense conclusion that plaintiff was capable of performing work at a lower exertional level of light work. *See Gordils*, 921 F.2d at 329. In fact, speaking hypothetically, the First Circuit in *Gordils* addressed a similar situation to that of this case, stating that:

> [I]f the only medical findings in the record suggested that a claimant exhibited little in the way of physical impairments, but nowhere in the record did any physician state in functional terms that the claimant had the exertional capacity to meet the requirements of sedentary work, the ALJ would be permitted to reach that functional conclusion himself.

*Id.*

---

[3] The *Gordils* court noted that the ALJ in that case actually found that the plaintiff could perform light work, not sedentary work. 921 F.2d at 329. The court noted it would be hesitant to find that the ALJ could rely on the consulting physician's report of a "weaker back" to support a functional finding that the plaintiff could perform light work. *Id.* Although the ALJ in this case did find that plaintiff could perform light work, the combination of the evidence as described above (the three doctors' reports, the treating therapist's opinion, and plaintiff's testimony) distinguishes the instant case from *Gordils*.

The court finds that the ALJ's RFC determination regarding plaintiff's physical impairments was supported by substantial evidence in the record as a whole. And again, plaintiff has failed to show how this more favorable determination—even if it were in error—harms or prejudices her.

### b. Mental Impairments

Plaintiff also argues that the ALJ's RFC determination is arbitrary because it fails to reflect plaintiff's true level of psychological functioning, is not based on substantial evidence, and is inconsistent with the record. The RFC limits plaintiff to "simple, routine and repetitive tasks in a work environment free of fast paced production requirements involving only simple work related decisions with few, if any work place changes." (R. at 15.) In addition, the RFC further limited plaintiff to "only occasional interaction with the public and can work around co-workers throughout the day, but with only occasional interaction with co-workers." (*Id.* at 15–16.)

Plaintiff's argument centers on the ALJ's weighing of the opinion of Dr. Shah, plaintiff's treating psychologist. Dr. Shah opined that plaintiff had marked and extreme limitations in several areas. (*Id.* at 18, 360–62, 608–09). Plaintiff argues that the ALJ's decision to give Dr. Shah's opinion "little weight" did not comply with Social Security Ruling 96-2p, 1996 WL 374188, at *1 (July 2, 1996), which requires that a treating source's medical opinion be given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record. But the ALJ properly found that Dr. Shah's expressed limitations on plaintiff were inconsistent with the medical record as a whole. (*Id.* at 18.)

The ALJ properly explained and supported her decision, noting that Dr. Shah's opinion in November 2009 that plaintiff had extreme limitations when traveling to unfamiliar places was inconsistent with plaintiff's ability to shop and drive, including plaintiff's ability to drive herself to the hearing, an unfamiliar place. (*Id.* at 18, 361, 44–45, 35–36.) Moreover, the ALJ cited plaintiff's own

-10-

testimony that Dr. Shah did not have a good understanding of her condition because he did not "really counsel her" and she only saw him once every six months for ten to fifteen minutes. (*Id*. at 18, 49–50.) The ALJ also pointed to other evidence in the record indicating that although plaintiff did have some cognitive limitations, they did not rise to the level of "extreme and marked" as put forth by Dr. Shah. (*Id*. at 18–21 (discussing, e.g., plaintiff's Global Assessment of Functioning score indicating only moderate symptoms; plaintiff's ability to live on her own until her son went into custody; and plaintiff's ability to take care of her son, prepare meals, perform household chores, and use a computer), 436, 36, 44–46.) The ALJ also noted plaintiff's testimony that she stopped working to take care of her son and to go to school online—and not because of any impairment. (*Id*. at 20, 37.) Finally, the ALJ noted that plaintiff testified she "could try" to perform a job with simple instructions. (*Id*. at 20, 41.)

In addition to the findings noted above, the ALJ gave significant weight to the opinions of the state agency psychological consultants. (*Id*. at 19, 518, 533.) The ALJ's RFC determination was properly based on the psychological consultants' opinions that plaintiff was able to remember short and simple instructions (as well as some at the intermediate level), could perform simple and routine tasks (as well as some at the intermediate level), and should have limited interaction with the public and other co-workers. (*Id*. at 19, 518, 532, 533.) The ALJ's RFC determination was supported by substantial evidence in the record regarding plaintiff's level of psychological functioning.

### *2.     Assessment of Plaintiff's Credibility*

When an ALJ's credibility determinations are supported by substantial evidence, the court will not upset them; they are "peculiarly the province of the finder of fact." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (citation omitted). When analyzing evidence of pain, the ALJ must first determine if the objective medical evidence demonstrates that a pain-producing impairment exists.

*Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987). Next, the ALJ must look at the nexus between the impairment and the plaintiff's allegations of pain. *Id*. If the nexus is sufficient, the ALJ must consider all of the evidence—both subjective and objective—to determine whether the plaintiff's pain is in fact disabling. *Id*.

The ALJ should show a close and affirmative link to substantial evidence, setting forth the specific evidence upon which she relies. *Sanders v. Astrue*, 266 F. App'x 767, 770 (10th Cir. 2008) (citing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). The ALJ may consider the following when making her credibility determination:

> (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment for relief of the symptoms; (6) measures other than treatment used to relieve the symptoms (e.g. rest); and (7) any other factors.

Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *1 (July 2, 1996). But the ALJ is not required to formally address every factor. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) (holding that a credibility finding "does not require a formalistic factor-by-factor recitation of the evidence . . . [s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility") (quotation marks and citation omitted).

The ALJ discussed the objective medical evidence in the record and contrasted plaintiff's subjective complaints with her activities and treatment. Based on this analysis, the ALJ found plaintiff's statements "not fully credible." (*Id*. at 20.) The ALJ found that there was insufficient medical evidence in the record to support the level of limitation alleged by plaintiff. (*Id*.) Specifically, the ALJ pointed to plaintiff's testimony that her medication helps and does not wear off until after a normal workday would end, she was able to live on her own until her son went into custody, she is mostly able to cope with her symptoms, and she denied any major complaints. (*Id*. at 20, 41, 36, 540.)

The ALJ also noted that plaintiff's inability to keep a job was likely more related to her personality and desire to express her opinion rather than any alleged mental impairment. (*Id*. at 20, 40–41.) Finally, the ALJ cited evidence indicating that plaintiff may not believe her condition is as serious as alleged. (*Id*. at 20–21 (noting that there were gaps in plaintiff's treatment and she failed to attend some medical appointments), 409, 410.)

The ALJ's credibility findings are well-explained and well-documented. She may not have discussed every factor, but strict adherence to the factors is not required. Given this situation, the court will not substitute its opinion for that of the fact-finder.

### III. Conclusion

The ALJ's decision regarding plaintiff's RFC for both physical and mental impairments is supported by substantial evidence in the record. The same is true for the ALJ's credibility findings, and the court will not disturb them. Based on the above analysis, the court affirms the decision of the ALJ.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is affirmed. Judgment shall be entered pursuant to fourth sentence of 42 U.S.C. § 405(g).

Dated this 26th day of July, 2013, at Kansas City, Kansas.

<u>s/ Carlos Murguia</u>
**CARLOS MURGUIA**
**United States District Judge**